# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DENIS WOZNIAK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 09 C 7702 |
| ) | |
| ARGONNE NATIONAL LABORATORY, ) | |
| QRDO CONSULTANTS CO., LLC, as ) | Honorable Charles R. Norgle |
| Plan Administrator for the Argonne National ) | |
| Laboratory Group Tax Deferred Annuity ) | |
| Program for Non-Staff Employees, and ) | |
| NANCY WOZNIAK, as alternate payee, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is Defendant Nancy Wozniak's ("Nancy") motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c) and Plaintiff Denis Wozniak's ("Plaintiff") motion for leave to file an amended complaint. This dispute stems from the parties' divorce proceedings in state court. Prior to this lawsuit, the Will County Circuit Court entered a judgment for dissolution of marriage that specified how Nancy and Plaintiff would divide their personal property and retirement plans. Defendant QRDO Consultants ("QRDO Consultants") assisted them in complying with the state court's order. In doing so, it concluded that Nancy was entitled to fifty percent of the increase in value of one of Plaintiff's retirement plans, or about $130,000. Plaintiff disagreed, and eventually this lawsuit arose. In response, Nancy now argues that this Court lacks subject matter jurisdiction over the case and that Plaintiff's claim is otherwise barred pursuant to res judicata. The Court agrees with Nancy on her second point. For the following reasons, Nancy's motion is granted with prejudice and Plaintiff's motion is denied as futile.

## I. BACKGROUND

### A. FACTS

The Court takes the following facts from Plaintiff's complaint, Nancy's answer and any written instruments attached to the pleadings, such as affidavits, declarations, letters, contracts and, in this case, state court documents. See N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 452-53 (7th Cir. 1998). When deciding these motions the Court may also consider documents incorporated by reference to the pleadings and "take judicial notice of matters of public record." U.S. v. Wood, 925 F.2d 1580, 1582 (7th Cir. 1991).

Plaintiff is a long time employee of the Argonne National Laboratory ("Argonne"). He served as a non-staff employee from August 1963 until January 1981, during which time he participated in and contributed to the Argonne National Laboratory Group Tax Deferred Annuity Program for Non-Staff Employees. The parties refer to this program as the "Plan" or the "Prudential Financial Plan," and the Court will do the same. In January 1981 Plaintiff became a staff employee and participated in and made contributions to the Argonne National Laboratory Group Tax Deferred Annuity Program for Staff Employees. As alleged, once an employee is converted from a non-staff employee to a staff employee, he or she can no longer participate in or contribute to the Prudential Financial Plan for non-staff employees.

Plaintiff married Nancy on June 28, 1986. They divorced on November 29, 2007, at which time the Will County Circuit Court entered a Judgment for Dissolution of Marriage that incorporated and set forth the terms of the parties' Marital Settlement Agreement. With respect to the parties' retirement plans, the Marital Settlement Agreement stated, in pertinent part:

> The parties have each earned certain retirement benefits in their own names during the marriage. Each party is awarded as their sole property any retirement

> funds found to be non-marital by designated actuary.[1] The parties agree to divide equally the marital portion of each and every plan in each party's name. To determine the marital portion, the parties will submit all required information to an actuary who will determine the marital portion and the parties will cooperate to have entered a Qualified Domestic Relations Order which divides the plans pursuant to this Judgment.

Compl., Ex. C, Marital Settlement Agreement at 4. In line with the Marital Settlement Agreement, the parties first agreed on a Qualified Domestic Relations Order ("DRO") but later entered into an Amended DRO after Plaintiff found the first DRO insufficient. The Will County Circuit Court approved of and entered the Amended DRO on February 17, 2009. For alternative payees, such as Nancy, the Amended DRO provided in pertinent part:

> Amount of Payee's Benefit (Percentage Basis): This Order assigns to Alternate Payee fifty percent (50%) of the marital portion of the Participant's Accounts without regard to any previous loans or withdrawals made by the participant. Marital portion shall be determined as those contributions, whether individual *or otherwise* to the Plan, during the marriage period of June 28, 1986 through November 29, 2007.

Compl., Ex. D ¶ 7 [emphasis supplied].

Later that year, QDRO Consultants assisted the parties in complying with the Amended DRO. In a letter to Nancy,[2] dated September 1, 2009, QDRO Consultants explained that Argonne hired them "for the review and administration of Qualified Domestic Relations Orders pertaining to [Argonne's] ERISA-governed, qualified retirement plans." Compl., Ex. E. To that end, in the same letter QDRO Consultants interpreted the Amended DRO with respect to the Prudential Financial Plan. They concluded that Nancy, as an alternate payee, was entitled to fifty percent of the increase in value of the Prudential Financial Plan for the time she was married to Plaintiff. According to Plaintiff, this turned out to be approximately $130,000. Recall, however,

---

[1] The parties agreed upon and handwrote this sentence into the Marital Settlement Agreement, as evidenced by the parties' handwritten initials.

[2] The letter by QDRO Consultants indicates that Denis Wozniak and his attorney received a carbon copy of the same letter.

3

that Plaintiff contributed to the Prudential Financial Plan when he worked at Argonne as a non-staff employee, before he married Nancy. This would become the primary basis for his objection to QDRO Consultants' interpretation of the Amended DRO.

In a letter dated September 10, 2009 Plaintiff's counsel wrote a letter to QDRO Consultants, advising them that Plaintiff objected to the interpretation of the Amended DRO and requesting that they refrain from administering it pursuant to their current interpretation. The letter noted, "[T]here is a hearing date set for October 1, 2009, in the Will County, Illinois, Circuit Court to address how said [Amended] QDRO should be interpreted and whether an amended QDRO should be entered due to the different interpretations of the current [Amended] QDRO." Compl., Ex. F. Plaintiff presented his challenge to the state court.

Plaintiff alleges that at the hearing in the Will County Circuit Court the state court judge indicated that the court did not have jurisdiction "over the Plan Administrator's interpretation of the Plan." Compl. ¶ 26. Relying on this statement, Plaintiff simply assumed that QDRO Consultants were the plan administrators for Argonne's ERISA-governed plans, and further assumed that the state court did not have jurisdiction over Plaintiff's objection. Based on these assumptions, Plaintiff abandoned his objection in the state court and, as alleged, withdrew his motion.

## B. PROCEDURAL HISTORY

Having withdrawn his objection in the state court, Plaintiff initiated this case on December 11, 2009, in which he maintains that he made no contributions to the Prudential Financial Plan during his marriage with Nancy and thus Nancy was not entitled to any proceeds from the plan. See Compl. ¶ 27. Although the complaint does not contain any theories of liability, it indicates that jurisdiction is appropriate in this Court pursuant to ERISA and requests

4

that the Court make declarations that are contrary to QDRO Consultants' interpretation of the Amended DRO. Nancy filed an answer to the complaint that denied all material allegations and asserted several affirmative defenses. On April 9, 2009 Nancy filed a motion for judgment on the pleadings. Plaintiff filed a response to Nancy's motion on May 28, 2010. At the same time, Plaintiff filed a motion for leave to file an amended complaint. Both motions are now fully briefed and before the Court.

## II. DISCUSSION

### A. STANDARD OF DECISION

Under FED. R. CIV. P. 12(c), a party can move for judgment on the pleadings once the parties have filed the complaint and answer. N. Ind. Gun & Outdoor Shows, 163 F.3d at 452. The court reviews Rule 12(c) motions under the same standard that it reviews Rule 12(b)(6) motions for failure to state a claim on which relief can be granted. Pisciotta v. Old Nat'l Bancorp., 499 F.3d 629, 633 (7th Cir. 2007); Guise v. BWM Mortg., LLC, 377 F.3d 795, 798 (7th Cir. 2004). To defeat a Rule 12(c) motion, a plaintiff must demonstrate that his or her complaint provides notice of plaintiff's claims and the grounds upon which they rest, and must contain sufficient allegations, based on more than speculation, to state a claim for relief that is plausible on its face. St. John's United Church of Christ v. City of Chi., 502 F.3d 616, 625 (7th Cir. 2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court, however, must accept as true the factual allegations contained in the complaint and draw all reasonable inferences in favor of the non-moving party. St. John's United Church of Christ, 502 F.3d at 625; Guise, 377 F.3d at 798.

## B. JUDGMENT ON THE PLEADINGS

Nancy first argues that Plaintiff's claim is barred pursuant to the Rooker-Feldman doctrine because it indirectly challenges the Will County Circuit Court's final judgment. This argument, at its core, challenges the Court's subject matter jurisdiction. See, e.g., Epps v. Creditnet, Inc., 320 F.3d 756, 759 (7th Cir. 2003). It follows that if success on a claim in the federal court would require overturning a state court decision, then the Court lacks jurisdiction to decide the matter in the first instance. Id. But, while that may be the case, the Court believes that Nancy's alternative argument is more persuasive.

Nancy also argues that Plaintiff's claim is barred by res judicata, or claim preclusion, which differs only slightly from Rooker-Feldman. While the latter prohibits the Court from second-guessing state court decisions, res judicata requires the Federal District Court to give a state court judgment the same preclusive effect it would have in the state court. See Kamilweicz v. Bank of Boston Corp., 92 F.3d 506, 509 (7th Cir. 1996); Long v. Shorebank Dev. Corp., 182 F.3d 548, 560 (7th Cir. 1999). This means that once the state court has entered a final judgment on the merits of an action, res judicata precludes the parties from either relitigating issues that were or *could have been* raised in the state court. See Highway J Citizens Group v. United States Dep't. of Transp., 456 F.3d 734, 741 (7th Cir. 2006). There are three requirements for res judicata: "(1) an identity of the parties or their privies; (2) identity of the cause of action; and (3) a final judgment on the merits." Id. Once these requirements are fulfilled, res judicata "bars not only those issues which were actually decided in a prior suit, but also all issues which could have been raised in that action." Brzostowski v. Laidlaw Waste Sys., Inc., 49 F.3d 337, 338 (7th Cir. 1995). The second element is the only element that Plaintiff disputes.

Here, Nancy argues that res judicata bars Plaintiff's claims because he could have raised an argument in the state court that the Prudential Financial Plan did not contain a marital portion of Plaintiff's retirement accounts. But Plaintiff didn't make that argument. He waited, Nancy says, until the QDRO Consultants interpreted the Court's Order in her favor. Then, when Plaintiff challenged the decision, he simply gave up when the state court asserted that it lacked jurisdiction over the dispute. No appeal was taken. In response, Plaintiff contends that res judicata doesn't apply because this Court is not "deal[ing] with the division of marital property," as the state court did; rather, the case involves a determination of "whether the QDRO was improperly administered according to its own language." Pl.'s Resp. at 4-5. This difference, according to Plaintiff, negates the identical claims requirement for res judicata. The Court does not agree.

The problem with Plaintiff's argument is that for this Court to determine whether the Amended DRO was properly administered, it has to interpret the Amended DRO's language. In other words, for Plaintiff to win in this Court, the Court eventually would have to find that the Prudential Financial Plan should have been excluded from Paragraph 7 of the Amended DRO. This is indeed a finding that the state court could have entered. And if it failed to do so, then Plaintiff could have raised the issue in the state court. This illustrates that Plaintiffs' claims in this Court arose from the Amended DRO and are therefore based on "the same incident, events, transaction, circumstances, [and] other factual nebula as" the state court suit. Okoro v. Bohman, 164 F.3d 1059, 1062 (7th Cir. 1999). This is all that's required to satisfy res judicata's identity of claims element, and thus the Court agrees with Nancy on this issue. See Highway J Citizens, 456 F.3d at 741 (identity of causes of action exists where those actions "emerge from the same core of operative facts as that earlier action."); Herrmann v. Cencom Cable Assoc., Inc., 999

F.2d 223, 226 (7th Cir. 1993) ("[T]wo claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations."); Laidlaw Waste Sys., 49 F.3d at 339 (applying res judicata where "the legal elements of each claim may be different, [but] the central factual issues are identical."). In the end, because Plaintiff could have raised his claims in the state court, his factually similar claims in this Court are barred by res judicata. The motion for judgment on the pleadings is therefore granted, with prejudice.

Furthermore, the Court notes that to the extent Plaintiff seeks to differentiate this case on the grounds that it is challenging QDRO Consultants' administration of the Amended DRO, and not the entry of the Amended DRO itself, such an argument would fail, given that Plaintiff filed an objection to QDRO Consultants' interpretation in the state court. As it happened, Plaintiff withdrew that objection when the state court expressed a doubt as to whether it had jurisdiction to hear Plaintiff's objection. Arguably Plaintiff either should have pressed the issue in the state court, or he should have appealed to the Illinois Appellate Court. Cf. Robson v. Elec. Contractors Ass'n Local 134, 727 N.E.2d 692, 697 (Ill. App. Ct. 1999) ("[S]tate and federal courts have concurrent subject matter jurisdiction to construe the ERISA provisions relating to a QDRO. . . ."). This is not the proper forum to challenge either the Judgment of Dissolution or the Amended DRO, no matter the method through which the challenge is brought.

Finally, since Plaintiff's claims are barred pursuant to res judicata, the Court declines to address Nancy's motion based on Rooker-Feldman. Plaintiff's claims are barred, thus any amendment Plaintiff seeks to make to his complaint would be futile. Accordingly, the motion for leave to file a first amended complaint is denied.

8

## III. CONCLUSION

For the foregoing reasons, Defendant Nancy Wozniak's motion for judgment on the pleadings pursuant FED. R. CIV. P. 12(c) is granted, with prejudice, and Plaintiff Denis Wozniak's motion for leave to file a first amended complaint is denied.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 10-1-10